UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

    Plaintiff,

v.

ONVIA, INC., *et al.*,

    Defendants.

Case No. C06-1056RSL

ORDER REGARDING CROSS
MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for partial summary judgment (Dkt. #20) filed by defendants Onvia, Inc., Onvia.com (collectively, "Onvia") and Responsive Management Systems ("RMS"). RMS, as the assignee of all of Onvia's rights against St. Paul Fire and Marine Insurance Company ("St. Paul"), alleges that St. Paul breached its duty to defend Onvia in underlying litigation, and that it breached that duty in bad faith. St. Paul cross moved for summary judgment (Dkt. #37) seeking a declaration that the policy affords no coverage and seeking dismissal of RMS's counterclaims for breach of the duty to defend, indemnify, and settle and for bad faith regarding the same.

For the reasons set forth below, the Court grants St. Paul's motion and denies RMS's

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 1

1  motion.[1]

## II.  DISCUSSION

**A.    Background Facts.**

Onvia is a for-profit corporation that sells a service called "DemandStar" the provides businesses with notices of opportunities to bid for government contracts.  RMS is a sole proprietorship operating in Washington.

On February 3, 2005, RMS served its class action complaint in <u>Responsive Management Systems v. Onvia, Inc.</u>, King County Cause No. 05-2-04728-3SEA (the "underlying action").  The complaint alleged that Onvia engaged in "fax blasting," or the mass sending of unsolicited advertisements via facsimile, in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, the Washington Unsolicited Telefacsimile Act ("WUTA"), RCW 80.36.540, and the Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq*.  The complaint alleged that RMS received an unsolicited facsimile from Onvia on or about August 23, 2001.  RMS subsequently filed its first amended complaint by agreement in September 2005.  RMS sought to represent a nationwide class of persons who received an unsolicited advertisement from Onvia during the statute of limitations period promoting Onvia's services.  In April 2006, RMS and Onvia settled the underlying litigation for over $17 million.  Pursuant to the settlement agreement, Onvia assigned all of its rights and claims against St. Paul to RMS.

**B.    The Relevant Policy Language and St. Paul's Coverage Decision.**

RMS alleges that St. Paul's defense obligation arose under St. Paul's Technology Commercial General Policy no. TE08401202 as it was in effect from February 28, 2003 to March 1, 2005 (the "policy").  When the policy was renewed on February 28, 2003, St. Paul added Advertising Injury and Personal Injury coverage.  The Advertising Injury provision, which is the only section RMS alleges covers the claims in the underlying litigation, states:

---

[1]  Because this matter can be decided on the parties' memoranda, declarations, and exhibits, the parties' request for oral argument is denied.

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 2

> **Advertising Injury Liability.**  We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:
> • Results from the advertising of your products, your work, or your completed work; and
> • Is caused by an advertising injury offense committed while this agreement is in effect.
>
> We won't consider advertising, borders, or framers for or of others, or links for or to others, that are on or in your website to be advertising of your products, your work, or your completed work.
>
> *Advertising injury* means injury, other than bodily injury or personal injury, that's caused by an advertising injury offense.
>
> **Advertising injury offense** means any of the following offenses:
> • Libel, or slander, in or with covered material.
> • Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.
> • Making known to any person or organization covered material that violates a person's right of privacy.
> • Unauthorized use of any advertising material, or any slogan or title, of others in your advertising.
>
> *Advertising* means attracting the attention of others by any means for the purpose of:
> • seeking customers or supporters; or
> • increasing sales or business.
>
> *Advertising material* means any material that:
> • is subject to copyright law; and
> • others use and intend to attract attention in their advertising.

First Declaration of Mark Griffin, (Dkt. #21) ("First Griffin Decl."), Ex. E.  The policy also defines "covered material" as "material in any form of expression, including material made known in or with any electronic means of communication, such as the Internet."[2]

The policy includes a duty to defend:

> **Right and duty to defend a protected person.**
> We'll have the right and duty to defend any protected person against a claim or suit for injury or damage covered by this agreement.  We'll have such right and duty even if all of the allegations of the claim or suit are groundless, false, or fraudulent.  But we won't have a duty to perform any other act or service.

Id.

---

[2] The policy St. Paul issued to Onvia for the period from March 1, 2005 to March 1, 2006 contained a specific exclusion for unsolicited communications: "We won't cover injury or damage that results from any actual or alleged violation of any law or regulation that restricts or prohibits the transmitting of unsolicited communication."  Second Griffin Decl., Ex. A.

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 3

Onvia's broker allegedly sent RMS's original complaint to St. Paul on February 24, 2005 and tendered the underlying litigation claim for defense and indemnification.[3]  Second Declaration of Mark Griffin, (Dkt. #22) ("Second Griffin Decl."), Ex. A.  Onvia sent a copy of the first amended complaint to St. Paul shortly after it was filed.

St. Paul sent a letter dated November 4, 2005 denying coverage.  The letter contains, among other reasons, the following explanation for its coverage decision:

> [T]he First Amended Complaint does not allege or seek to recover damages for any of the enumerated personal injury or advertising injury offenses.  In particular, it does not allege or seek to recover damages for "making known to any person or organization covered material that violates a person's right of privacy."  This offense is intended to provide coverage where an insured makes known to others covered material that violates some other person's right of privacy.  Merely making an alleged unsolicited telephone call to the plaintiff does not involve "making known" of "covered material" to others.  The "making known" requirement makes clear that the violation of a person's right of privacy must arise from the content of the material – in other words, from the substance of what the material says, and not from the mere fact that the material was transmitted.  Moreover, the policy language clearly contemplates that the claimant, the "person" whose right of privacy is violated – will not be the same as the "person or organization" to whom the covered material is made known.  In this case, however, any supposed violation of the right of privacy has been suffered by the same party to whom the covered material was allegedly made known – the recipients of the allegedly unsolicited faxes.  Therefore, the allegations in the First Amended Complaint would not implicate any personal or advertising injury liability protection that might have been provided [under the policy].

Second Griffin Decl., Ex. A.

St. Paul filed this action in this Court on July 26, 2006 alleging jurisdiction based on diversity of the parties.  St. Paul seeks a declaratory judgment stating, among other things, that it had no duty to defend or indemnify Onvia in the underlying litigation.  RMS asserts three counterclaims: (1) breach of the duties to defend, indemnify, and settle; (2) bad faith breach of the duties to defend, indemnify, and settle; and (3) statutory and common law procedural bad faith.

The current motions will resolve St. Paul's claim that it had no duty to defend or

---

[3] St. Paul has no evidence in its file that it received the February 2005 communication. Supplemental Declaration of Joseph Hampton, (Dkt. #31) at ¶ 5.  Although the issue is not relevant to this motion, RMS will likely raise it regarding its claim for procedural bad faith.

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 4

indemnify as well as RMS's first two counterclaims. The parties have not yet addressed RMS's third counterclaim for statutory and common law procedural bad faith which remains for later adjudication.

**C.     Summary Judgment Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

**D.     Analysis.**

Because this is a diversity case, the Court applies Washington's choice of law rules. The parties agree and the Court finds that Washington law applies.

> In Washington, insurance policies are construed as contracts. An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. If the clause is ambiguous, however, extrinsic evidence of intent of the parties may be relied upon to resolve the ambiguity. Any ambiguities remaining after examining applicable extrinsic evidence are resolved against the drafter-insurer and in favor of the insured. A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.

Panorama Vill. Condo. v. Allstate Ins. Co., 144 Wn.2d 130, 137 (2001) (quoting Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 665-66 (2000)) (internal quotations omitted).

The duty to defend is broader than the duty to indemnify. See, e.g., Truck Ins. Exchange v. Vanport Homes, Inc., 147 Wn.2d 751, 760 (2002). The duty to defend "arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." Id. (internal citation and quotation

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 5

omitted). The insurer is relieved of the duty to defend only if the claim alleged is clearly not covered by the policy. Kirk v. Mt. Airy Ins. Co., 134 Wn.2d 558, 561 (1998) (internal citation omitted). If the complaint is ambiguous, it will be liberally construed in favor of triggering the insurer's duty to defend. R.A. Hanson Co. v. Aetna Ins. Co., 26 Wn. App. 290, 295 (1980). The Court therefore compares the allegations in the complaint to the policy language to determine if the complaint "sets forth facts which, if proved, would trigger coverage." Truck Ins. Exchange, 147 Wn.2d at 762.

In this case, the first amended complaint alleges claims that RMS suffered injury based on the transmission of the facsimile. It alleges an injury based on the loss of its resources from receipt of the unsolicited facsimile. Although the first amended complaint does not specifically allege a privacy violation or mention the word privacy, the allegations are broad enough to include a privacy claim. The TCPA is aimed at protecting recipients from the intrusion of receiving unwanted communications. See, e.g., Resource Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 639 (4th Cir. 2005).

Although the first amended complaint conceivably alleges some sort of privacy intrusion, it does not contain any allegations regarding the content of the transmissions. The policy, in contrast, provides coverage for "[m]aking known to any person or organization covered material that violates a person's right of privacy." This phrase, although it could have been more clear in hindsight, is not ambiguous.[4] RMS attempts to create ambiguity by parsing each word. The phrase, however, must be read as a whole and in context with the rest of the policy language. See, e.g., Hess v. N. Pac. Ins. Co., 122 Wn.2d 180, 186 (1993) ("In construing the language of an insurance policy, the entire contract must be construed together so as to give force and effect to each clause. If the language in an insurance contract is clear and unambiguous, the court must

---

[4] See, e.g., State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc., 121 Wn. App. 358, 367 (2004) (explaining that a term is not ambiguous simply because the insurer "could have further clarified or expressly defined the term").

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 6

enforce it as written and may not modify the contract or create ambiguity where none exists") (internal citation and quotation omitted).

In context, the policy language covers claims when the "making known" of the *content* of material, and not just a transmission, violates a person's right to privacy. The policy does not cover all privacy violations resulting from advertising. As the Fourth Circuit explained when analyzing nearly identical policy language:

> It requires undue strain to believe that sending an unsolicited fax ad that has no private information or content (but rather simply advertised the sender's wares) can reasonably be said to "make known" material that violates a person's right to privacy. It surely seems to us that the plainest and most common reading of the phrase indicates that "making known" implies telling, sharing or otherwise divulging, such that the injured party is the one whose private material is *made known*, not the one *to whom* the material is made known.

Resource Bankshares Corp., 407 F.3d at 641 (emphasis in original). As the Resource Bankshares court noted, its interpretation of the phrase was consistent with the other listed "advertising injuries," which include libel or slander and making known material that disparages the products or work of others. Id. (explaining that all four of the advertising offenses "share the common thread of assuming that the victim of the advertising injury offense is harmed by the sharing of the *content* of the ad, and not the mere *receipt* of the advertisement") (emphasis in original); see also Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co., 432 F. Supp. 2d 488, 503 (E.D. Pa. 2006) ("It is the person whose secret is revealed by the content of the ad, not the person or organization to whom the secret is revealed, that suffers the injury"). The Court finds the reasoning in Resource Bankshares and Melrose Hotel Co. persuasive. Similarly, in this case, the offenses enumerated in the policy clearly relate to the content of the covered material and an injury to the person whose private information is revealed. In contrast, the gravamen of the complaint in the underlying litigation is the receipt of unsolicited facsimiles in violation of the TCPA and other statutes. The TCPA prohibits only a particular means of transmission; the

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 7

content is irrelevant.[5]

In support of its position, RMS has submitted a declaration from a purported expert, J. Kay Thorne, CPCU, opining regarding the industry standards and stating his conclusions regarding whether St. Paul breached its duties and acted in bad faith. (Dkt. #23). The Court has considered the opinion regarding the industry standards, but has not considered the legal conclusions. The information regarding the industry standards, however, is more applicable to RMS's claim for procedural bad faith, which is not presently before the Court.

Accordingly, the Court finds that the allegations in the underlying litigation, construed liberally, did not state a claim covered by the policy. St. Paul is not required to indemnify Onvia or its assignee.

RMS argues that even if St. Paul is not required to indemnify, it was required to defend because the duty is broader and no Washington court has addressed whether a fax-blasting claim asserts an "advertising injury." RMS also argues that other courts have held that TCPA claims allege covered advertising injuries. Washington law does not support RMS's argument that an insurer must defend unless a Washington court has upheld the insurer's position. RMS relies on Allstate Ins. Co. v. Bowen, 121 Wn. App. 879, 901 (2004) to support its argument. In that case, the insurer initially accepted tender of defense stating that it was doing so in part because "Washington Courts have not specifically ruled" on the issue. The court noted that it was

---

[5] See, e.g., American States Ins. Co. v. Capital Assocs. of Jackson County, 392 F.3d 939, 942 (7th Cir. 2004) (finding no coverage where the policy covered "publication of material that violates a person's right of privacy" but the TCPA protects only "seclusion" interests, not secrecy); St. Paul Fire & Marine Ins. Co. v. Brunswick Corp., 405 F. Supp. 2d 890 (N.D. Ill. 2005) (holding, under similar policy language, "[b]ecause the underlying complaint does not allege that the 'material' in defendants' advertisement violated plaintiff's right to privacy, only that the mere sending of the facsimiles, regardless of their content, violates the plaintiff's rights, the underlying claim is not even potentially within the scope of coverage" and therefore there was no duty to defend); cf. Hooters of Augusta, Inc. v. Am. Global Ins. Co., 157 Fed. Appx. 201 (11th Cir. 2005) (finding coverage but distinguishing the Resource Bankshares case by noting that the Fourth Circuit considered "a more tightly worded advertising-injury provision" which suggested a focus on secrecy).

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 8

"difficult to reconcile" the insurer's position on appeal with its letters. The court went on to state, "Assuming for purposes of this discussion that the scope of its duty to defend was unclear under Washington law, under *Truck Insurance Exchange* there was a duty to defend at that time." Neither Bowen nor Truck Ins. Exchange held that an insurer is required to defend if Washington courts have not addressed the issue.[6] Rather, as set forth above, Washington courts focus on the policy and complaint language to determine if the allegations could conceivably be covered. Furthermore, every other court that has considered St. Paul's "advertising injury" policy language has concluded that it does not cover fax-blasting claims. See, e.g., Resource Bankshares Corp., 407 F.3d at 642 (applying nearly identical language and finding no coverage for TCPA claims); Melrose Hotel Co., 432 F. Supp. 2d at 504 (applying identical policy language and finding no coverage for TCPA claims); ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co., 2007 Cal. App. LEXIS 113 (Jan. 29, 2007) (published in relevant part) (holding that both the text of St. Paul's advertising injury provision and the context in which it appears in the policy confirm that the policy does not provide coverage for TCPA claims). Under these circumstances and pursuant to the plain language of the policy and the first amended complaint, St. Paul did not breach its duty to defend.

RMS also argues that St. Paul breached its duty to defend, indemnify and settle in bad faith. To establish bad faith, RMS must show that the "insurer committed a breach that was unreasonable, frivolous, or unfounded." See, e.g., Kirk, 134 Wn.2d at 560 (explaining that bad faith will not be found where a denial of coverage or a failure to provide a defense is based upon a reasonable interpretation of the insurance policy). In this case, St. Paul did not commit any breach, much less one that would be viewed as unreasonable, frivolous, or unfounded. Instead, its interpretation of the policy was reasonable. Accordingly, St. Paul is not liable for a bad faith

---

[6] Nor are insurers required to defend under a reservation of rights. Rather, they may do so, and courts may find that insurers have waived their coverage defenses if the denial is wrongful. See, e.g., Kirk, 134 Wn.2d at 564.

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 9

breach of the duties to defend, indemnify and settle.

## III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS St. Paul's motion for partial summary judgment (Dkt. #37) and DENIES RMS's motion for partial summary judgment (Dkt. #20).

DATED this 16th day of February, 2007.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER REGARDING CROSS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT - 10